Eric D. Witkin  
Elias J. Kahn  
LITTLER MENDELSON  
A Professional Corporation  
Attorneys for Defendants  
900 Third Avenue, 20th Floor  
New York, New York 10022  
212.583.9600

FILED ELECTRONICALLY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THOMAS MCCORMACK,

        Plaintiff,

-against-

MTA METRO-NORTH RAILROAD, HARRY KELLY AND ROBERT SARACENI,

        Defendants.

2008 CV 4057 (SHS)

**NOTICE OF DEFENDANTS'**
**MOTION TO DISMISS**

**PLEASE TAKE NOTICE** that, upon the Amended Complaint herein dated July 11, 2008 attached hereto ("Complaint"), the accompanying Defendants' Memorandum of Law in Support of Their Motion to Dismiss, and upon all of the pleadings and proceedings herein, Defendants MTA Metro-North Railroad ("MNRR"), Harry Kelly ("Kelly"), and Robert Saraceni ("Saraceni") (collectively, "Defendants"), by their attorneys Littler Mendelson, P.C., will move this Court before the Honorable Sidney H. Stein, at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl St., Room 1010, New York, NY 10007, on a date and at a time to be designated by this Court, for an Order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the Complaint in its entirety and for such other and further relief as may be just and proper.

The instant Motion to Dismiss seeks dismissal of all claims for relief in the Complaint as to all Defendants for failure to state a claim upon which relief can be granted.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to this Court's Local Civil Rule 6.1(b) any papers in opposition to the instant Motion shall be served within 10 business days after service of the moving papers.

Dated: August 1, 2008
New York, New York

>Respectfully submitted,
>
>**LITTLER MENDELSON**
>A Professional Corporation
>
>By: _____
>Eric D. Witkin
>Elias J. Kahn
>900 Third Avenue, 20th Floor
>New York, NY  10022
>212.583.9600
>
>Attorneys for Defendants

TO:   Michael G. O'Neill
      30 Vesey Street, Third Floor
      New York, New York 10007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THOMAS MCCORMACK,<br><br>Plaintiff,<br><br>-against-<br><br>MTA METRO-NORTH RAILROAD, HARRY KELLY AND ROBERT SARACENI,<br><br>Defendants. | 2008 CV 4057 (SHS)<br><br>**CERTIFICATE OF SERVICE** |

  I hereby certify that on August 1, 2008, I served the foregoing Notice of Motion to Dismiss on the following by filing it electronically with Clerk of the above-captioned Court using its CM/ECF systems and by also sending a copy via Federal Express next business day delivery, by placing said copy into a sealed envelope with postage affixed thereon into an official depository under the exclusive care and custody of the United States Postal Service, upon:

    Michael G. O'Neill
    30 Vesey Street, Third Floor
    New York, New York 10007

  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

  Executed this 1st day of August 2008, in New York, New York.

              By: /s/ Anna Maria Loiacono

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------

| | |
|---|---|
| Thomas McCormack, | ] |
| Plaintiff, | ] 2008 CV 4057 (SHS) |
| - against - | ] Amended Complaint and Demand for Jury Trial |
| MTA Metro-North Railroad, Harry Kelly and Robert Saraceni, | ] |
| Defendants. | ] |

------------------------------------

Plaintiff, by his attorney, Michael G. O'Neill, states for his amended complaint against the defendants as follows:

1. This Court has jurisdiction under 28 U.S.C. 1331, 28 U.S.C. § 1343(4) and 28 U.S.C. §1367.

2. Venue is properly situated in the Southern District of New York pursuant to 28 U.S.C.A. § 1391 because one or more defendants reside in this district and the events and transactions giving rise to this lawsuit occurred in the Southern District of New York.

3. Plaintiff is a resident of the City and State of New York.

4. Defendant MTA Metro North Railroad ("Metro North") is a public corporation formed under the laws of the State of New York.

5. Defendant Harry Kelly ("Kelly") is an individual and at all relevant times has been employed by Metro North as the Superintendent of Building Services of Grand Central Station ("Grand Central"), a railway station operated by Metro North.

6. Defendant Robert Saraceni ("Saraceni") is an individual and at all relevant times has been employed by Metro North as the General Superintendent of Grand Central.

7.  At all relevant times, plaintiff has been employed by Metro North. Until about late June, 2007, plaintiff was the Assistant Superintendent of Grand Central. In that capacity, plaintiff reported to Kelly. Saraceni was the ultimate superior of both Kelly and plaintiff.

8.  Plaintiff was initially hired by Metro North in 1974, and for his entire tenure at Metro North up to June, 2007, plaintiff had been employed in the GCT Department. Plaintiff had a record of excellent work performance and consistently met or exceeded all expectations of Metro North.

9.  In early 2003, Metro North communicated to its managers the fact that it had reached a settlement with a group of current and past African American employees who had alleged that Metro-North's decentralized disciplinary and promotional practices had resulted in widespread unlawful discrimination in the workplace. Plaintiff was given to understand that variances from and violations of Metro North's employment policies, particularly those with respect to hiring, compensation and discipline, were likely to result in the violation of City, State and Federal laws against discrimination.

10. As a manager, plaintiff was charged with the responsibility to ensure that he faithfully complied with all of Metro-North's policies regarding non-discrimination and equal employment in the workplace, including the obligation to report any suspected violations of those policies and that he cooperate fully with all investigations concerning the same.

11. Metro North's Workforce Diversity Department was entrusted with enforcing Metro North's non-discrimination and equal employment policies. In 2006 and early 2007, plaintiff participated in several investigations by the Workforce Diversity Department of complaints of discrimination and unfair treatment within the GCT Department.

Although plaintiff was not privy to all aspects of the complaints in question, he was aware that they involved, among other things, Kelly's subversion of Metro-North's policies regarding compensation, hiring and promotion. Plaintiff understood that similar subversions of Metro-North's policies had given rise to the discrimination claims that were settled in 2003, and he reasonably believed that the investigation into these complaints by Metro North's Workforce Diversity Department was to assist Metro North in preventing and addressing possible violations of City, State and Federal laws against discrimination, including 42 U.S.C. §1981 and the Civil Rights Act of 1964 (Title VII), the New York State Executive Law and Article 8 of the New York City Administrative Code.

12.     Plaintiff was aware the Kelly had taken action to subvert Metro North's established hiring practices. Indeed, plaintiff had opposed the actions of Kelly, and plaintiff communicated this fact and Kelly's violations of Metro North's established hiring practices to Workplace Diversity. Although plaintiff was unaware of the particulars of the complaints that had been made to Workplace Diversity, he reasonably believed that Kelly's subversion of Metro North's hiring practices exposed Metro North to claims of illegal discrimination, based on the bringing of such claims in the past and Metro North's own warning to the same effect.

13.     On about June 20, 2007, Kelly informed plaintiff that he, Kelly, was going to give plaintiff his annual performance review. Kelly warned plaintiff that he would not like the review, and he told plaintiff that the negative content in the review stemmed from the fact that he had provided information to Workforce Diversity that contradicted information given to it by Kelly, causing problems for Kelly.

14. Plaintiff immediately wrote a rebuttal to Kelly's performance review. In that rebuttal, he complained that Kelly's negative review constituted unlawful retaliation for cooperation with Metro North's Workforce Diversity investigations.

15. On about June 26, 2007, plaintiff met with Saraceni concerning Kelly's negative review and his rebuttal to it. In that meeting, Saraceni told plaintiff that Metro North's Human Resources Department had shared with Saraceni information that could only have come from plaintiff. Saraceni echoed Kelly's criticism of plaintiff for "going outside the chain of command." Saraceni accused plaintiff of not being a "team player" and of being "disloyal" to the GCT Department.

16. Following the June 26, 2007 meeting, Saraceni removed plaintiff from his position as Assistant Superintendent and put him on a temporary assignment with no duties or responsibilities.

17. Shortly thereafter, plaintiff filed an internal complaint of retaliation with Metro North's Human Resources Department. Although plaintiff was led to believe that the Human Resources Department upheld his claim of retaliation, there were no adverse consequences to Kelly or Saraceni, and plaintiff was not reinstated to my position as Assistant Superintendent of Grand Central Station.

18. Instead, on about September 24, 2007, plaintiff was installed in a new position that had been created specifically for him outside of the GCT Department, thereby making permanent the removal of plaintiff from the GCT Department, in which plaintiff had spent his entire career and in which he had risen to a position of respect and prestige.

19. The actions taken by Kelly and Saraceni, as ratified by Metro North, would dissuade reasonable workers employed by Metro North from cooperating with Workforce Diversity's investigations of complaints of discrimination and unlawful treatment for several reasons.

20. First, at Metro North the involuntary transfer or reassignment of a Manager is universally viewed as a disciplinary measure. Indeed, in the case of a manager such as plaintiff, who had spent over 33 years in the same department, the abrupt transfer out of that position and into an obscure position in another department is tantamount to a disgraceful demotion and suggests that the employee in question had been involved in some scandal or embarrassment to Metro North.

21. Second, the fact that plaintiff's removal from the Department was made permanent by Metro North and that Saraceni and Kelly suffered no adverse consequences for their unlawful retaliation, sends a clear signal that Human Resources is unable or unwilling to protect employees who support claims of discrimination or assist in the investigation of such claims. The apparent unwillingness or inability to protect employees against unlawful retaliation in itself is a powerful deterrent to employees coming forward to assist in investigations of unlawful discrimination.

22. Finally, the involuntary transfer to a new position for which one is untrained imposes significant stress upon the employee under the best of circumstances and creates the opportunity for further adverse job consequences because of unsatisfactory work performance under the worst. Plaintiff was within a few years of retirement when he was involuntarily removed from his department. Until then, he merely had to meet the requirements of a position with which he was fully familiar and which he had satisfactorily performed for years.

In that position, plaintiff had tremendous job security and every right to expect to retire from his position. Now, after the retaliation, plaintiff is required to learn new skills just to be able to meet the requirements of his position.

23. The removal of plaintiff from his department of 33 years and the involuntary transfer of him to a new position has caused him significant embarrassment, stress and other mental suffering. Plaintiff has had to face the perception that his removal and transfer was the result of some misfeasance on his part. Saraceni and Kelly have openly derided plaintiff and his attempt to vindicate himself. He has lost the prestige and respect that he built up in 33 years of faithful employment. He is faced with the challenge of performing a job that is ill-defined and having to meet the demands of two supervisors who have different views as to what plaintiff should be doing.

24. On about October 29, 2007, plaintiff filed timely charges of retaliation with the United States Equal Employment Opportunity Commission ("EEOC"). On about February 8, 2008, the EEOC issued its right to sue letter to plaintiff, which plaintiff received on or about February 11, 2008. Hence, plaintiff has satisfied all conditions precedent to his federal claims asserted herein.

25. On about October 30, 2007, plaintiff presented Metro North notice of claim, and more than 30 days have elapsed since said claim was presented to Metro North, and Metro North has neglected or refused to make an adjustment or payment thereof. Accordingly, plaintiff has satisfied all conditions precedent to his state law claims asserted herein.

**FIRST CLAIM FOR RELIEF**

26. Defendant Metro North unlawfully retaliated against plaintiff for opposing employment practices that he had reason to believe violated federal laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of those employment practices, in violation of 42 U.S.C. §1981 and 42 U.S.C. §2000e et seq.

27. As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendant Metro North is liable.

## SECOND CLAIM FOR RELIEF

28. Defendant Metro North unlawfully retaliated against plaintiff for opposing employment practices that he had reason to believe violated state laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of discriminatory employment practices, in violation of New York State Executive Law Section 296 et seq.

29. As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendant Metro North is liable.

## THIRD CLAIM FOR RELIEF

30. Defendant Metro North unlawfully retaliated against plaintiff for opposing employment practices that he had reason to believe violated city laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of discriminatory employment practices, in violation of Article 8 of the New York City Administrative Code.

31.     As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendant Metro North is liable.

### FOURTH CLAIM FOR RELIEF

32.     Defendants Kelly and Saraceni unlawfully retaliated against plaintiff for opposing employment practices that he had reason to believe violated federal laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of discriminatory employment practices, in violation of 42 U.S.C. §1981 and 42 U.S.C. §1983.

33.     As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendants Kelly and Saraceni are liable.

### FIFTH CLAIM FOR RELIEF

34.     Defendants Kelly and Saraceni unlawfully aided and abetted Metro North's retaliation against plaintiff for opposing employment practices that he had reason to believe violated state laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of discriminatory employment practices, in violation of New York State Executive Law Section 296 et seq.

35.     As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendants Kelly and Saraceni are liable.

### SIXTH CLAIM FOR RELIEF

36.     Defendants Kelly and Saraceni participate in Metro North's retaliation against plaintiff for opposing employment practices that he had reason to believe violated city

laws against discrimination and for assisting and participating in the Workforce Diversity Department's investigations of discriminatory employment practices, in violation of Article 8 of the New York City Administrative Code.

37. As a result of said unlawful retaliation, plaintiff has suffered damages, for which defendants Kelly and Saraceni are liable.

WHEREFORE, plaintiff seeks all relief to which he is legally entitled, including but not limited to a money judgment awarding economic, compensatory, liquidated and punitive damages, a statutory attorneys' fee, pre and post judgment interest, the costs and disbursements of this action, together with such further and additional relief as the Court deems just and proper.

Dated: New York, New York
July 11, 2008

MICHAEL G. O'NEILL
(MO3957)

*[signature]*

Attorney for Plaintiff
30 Vesey Street, Third Floor
New York, New York 10007
(212) 581-0990

## JURY DEMAND

Plaintiff demands trial by jury in this action.

Dated: New York, New York
       July 11, 2008

                                        MICHAEL G. O'NEILL
                                        (MO3957)

                                        Attorney for Plaintiff
                                        30 Vesey Street, Third Floor
                                        New York, New York 10007
                                        (212) 581-0990

CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury that she served a true copy of the within **Amended Complaint and Demand for Jury Trial** upon the following parties or their counsel, on July 11, 2008 by mail pursuant to Fed. R. Civ. P.5(b):

Eric Witkin, Esq.
Littler Mendelson PC
900 Third Avenue
New York, New York 10022

Dated: New York, New York
       July 11, 2008

*Diana Santana* (signature)
Diana Santana